# Charleston.

## LINN *v.* PATTON, TRUSTEE, *et al.*

(Absent, JOHNSON, JUDGE.)

Decided April 28, 1877.

1877.
January Term.

1. A bill having been filed to foreclose a mortgage executed by husband and wife, but which only conveyed personal property of the husband and his interest in a certain tract of land, the court ought not to permit an amendment of the bill seeking to charge the debts secured by such mortgage, on certain other real estate belonging to the wife as her sole and separate property, as such amendment would make the bill multiferous.

2. The certificate of an officer to the acknowledgment of a deed which omits to state that the wife of the grantor "did not wish to retract it," is defective, and the deed inoperative as to the wife.

3. A decree providing that if the defendant does not, in a given time, pay the plaintiff a certain sum, that certain property, real and personal, of the defendant, on which the plaintiff has a specific lien, shall be sold, is not a judgment which creates a lien on other real estate of the defendant.

4. A bill being filed to foreclose a mortgage, creditors of the grantor obtaining specific liens on the property conveyed by the mortgage, after the institution of the suit, need not, and ought not, to be made parties to the cause.

5. An answer being filed at the time a decree is about to be entered to sell defendant's land to pay plaintiff's debt, and a debt which is a prior lien, setting up in a vague manner that the defendant has another suit pending in which he expected to get a decree against the owner of this debt, which is a prior lien, and which decree, when obtained, could not be made except by its being allowed as an offset, which allegations are

denied and sustained by no proof, the court ought not to delay entering the decree for sale till the other cause is ready for hearing, so that the two causes might be heard together.

This was an appeal with *supersedeas*, from a decree of the circuit court of Kanawha county, rendered on the 13th day of June, 1874, in a cause in chancery then pending in said court, wherein J. H. Linn was plaintiff and Oliver A. Patton, trustee, and others, were defendants.

The appeal was granted upon the petition of Oliver A. Patton, trustee, and others.

A sufficient statement of the case is given by Green, President, in his opinion.

The Hon. Joseph Smith, Judge of tho seventh judicial circuit, rendered the decree complained of.

*Samuel A. Miller* and *James M. Laidley*, for appellants.

*H. C. McWhorter* and *Mollohan & Nash*, for appellees.

GREEN, PRESIDENT:

On the 20th day of April, 1867, the widow and devisees of William Tompkins, deceased, by deed of that date, partitioned among themselves the real estate of which he died seized. By this deed four tracts of land in West Virginia, one of them being in Fayette county, were conveyed to R. Ellen Patton, then R. Ellen Tompkins, one of said devisees. In the same deed, and after such conveyance to her, she, the said R. Ellen, conveyed the same lands to N. Fitzhugh upon certain trust, and it was recited that this division of the real estate of William Tompkins was made among his devisees excluding Charles C. Tompkins, who had sold and conveyed his entire interest for $25,000, to the other devisees, and that in part payment of the said sum the purchasers had executed their note to him for $11,335.13, and that each of said parties, including said R. Ellen, was bound for one seventh of this sum respectively, and it was agreed that this one-seventh of said sum should remain and be a lien

upon each of the respective shares or portions including that of the said R. Ellen, thereby conveyed, until said debt was fully paid off and discharged. The trusts upon which the said R. Ellen Patton, then R. Ellen Tompkins, conveyed the said four tracts of land to N. Fitzhugh were that she should receive the rents, issues and profits during her natural life; that in the event of her marriage, the trust should continue during the marriage; that if she should die, leaving issue, the trust should continue for the benefit of such issue, until they had arrived at the age of twenty-one years, and then pass to such issue, discharged from the trust.

Provision was also made for the sale of the property, and the reinvestment of the proceeds in other property upon the same trusts, by application to some court of record in Kanawha county.

R. Ellen Tompkins, after the execution of this deed, intermarried with the defendant Oliver A. Patton, who was thereafter substituted as a trustee in said deed in room of Fitzhugh, by order of Kanawha circuit court.

On the 7th January, 1869, the said Oliver A. Patton, as such trustee, and as the husband of the said R. Ellen, and said R. Ellen, executed to palintiff Linn a mortgage on certain personal property and upon the tract of land above referred to in Fayette, to secure to said Linn the payment of $1,075, evidenced by note then just due, given for moneys paid as securities of the parties of the first part by said Linn, and also to indemnify him in the further sum of $1,050, for any liability he might incur by becoming bound as security of the parties of the first part for the performance of the orders and decrees of the Louisville chancery court in the suit of B. B. Mason, against them then pending. This mortgage was duly acknowledged by Oliver A. Patton, trustee, and also individually, and it was acknowledged by R. Ellen Patton. But the clerk who took her acknowledgment of this deed entirely omited to state in the certificate that she did not wish to retract it. It was put on the record book,

in Louisville, where the personal property then was, and shortly thereafter in Kanawha county, West Virginia, where the grantors removed with said personal property.

In August, 1869, the plaintiff, Linn, filed his bill in Kanawha circuit court against Mrs. Patton, her trustee and others, for the purpose of foreclosing this mortgage. The bill alleged that the note for $1,075 was still unpaid, and that the plaintiff had also been compelled under decree of the Louisville court to pay the further sum of $1,050, for which he became the surety of Mrs. Patton in the Mason suit in that court. The bill prayed for the sale of the real and personal property set out in the mortgage for the satisfaction of these claims.

The cause was matured as to all the original defendants at the fall term, 1869. On the 9th March, 1870, by order of the court, Amanda L. Patton, infant child of the appellants, was made a party defendant to the suit, and Samuel A. Miller appointed her guardian *ad litem*. On the 12th April, 1870, her answer was filed, general replication thereto entered, and the cause then coming on to be heard upon the bill and exhibits taken for confessed and set for hearing at rules as to all the defendants, except the infant, and upon her answer and replication thereto, was referred by the court to Master Commissioner Burlew to report upon the amount and nature of the plaintiff's claim, its consideration, and for whose benefit created. Burlew having resigned his commissionership without executing this order of reference, on the 29th June, 1870, by order of the court, any one of the court's commissioners was authorized to execute the same.

On the 8th November, 1870, by order of the court, Nellie Tompkins Patton, another infant child of the appellants, born since the institution of the suit, was made a party defendant to the suit, and Samuel A. Miller was appointed her guardian *ad litem*. The children of Mr. and Mrs. Patton were made parties to the suit on account of whatever contingent interest they might have in the real estate mortgaged.

1877.
January Term.

Linn
v.
Patton, trustee,
et al.

On the 24th March, 1871, the commissioner returned to court his report made under the order of reference above mentioned, finding due to the plaintiff from the defendants, Patton and wife, on July 5, 1870, the sum of $2,227, and that the indebtedness was created for the benefit of Mrs. Patton and her trust estate. The same day the cause came on to be heard upon the papers and proceedings theretofore had and read, the answers of the two infant defendants and replications thereto, and upon the commissioner's report, to which no exceptions had been taken. The decree of March 24, 1871, was thereupon entered. By this decree the commissioner's report was approved and confirmed; and after reciting that the court was of opinion that the plaintiff was entitled to recover against Patton and wife the sum of $2,227, reported by the commissioner, with interest and costs, and that Mrs. Patton was entitled to a life estate in the land set out in the mortgage, and that this as well as the personal property conveyed by the mortgage were liable for plaintiff's said debt, the court proceeded, *by consent of all the parties,* signified by their signing the decree, to adjudge, order and decree a sale of Mrs. Patton's life estate in the land, and of the personal property, on the usual terms. L. A. Martin and H. C. McWhorter were appointed special commissioners *to execute the decree.* The consent of the appellants to this decree was signified by its being signed by O. A. Patton, as trustee for Mrs. R. Ellen Patton.

While this suit was still pending, and before the execution of the above decree of sale, viz: In July, 1871, Mrs. Patton filed a bill in the circuit court of Kanawha county against her trustee and husband, Oliver A. Patton, and her two children, Amanda L. and Nellie T., alleging that an error and mistake was made in drafting the deed of partition of April 20, 1867, between herself and the other devisees of William Tompkins, deceased, so far as related to the trusts therein created by her; that her true and sole purpose and intention, at the time she executed the

deed, was simply to convey her part of the property to a trustee as her sole and separate estate, free from the control and liabilities of her husband; that she did not intend to part with the fee in the property, or to limit her interest therein to a life estate, or to create a remainder in fee, or any estate whatsoever in said property, in any child, or children, that might thereafter be born to her. The bill therefore prayed that the trusts in the deed of partition might be reformed and corrected so as to carry out her true intent and purpose. This cause was regularly matured for hearing, and on the 8th July, 1871, the court pronounced a final decree in the case. By this decree the court ascertained that the allegations of Mrs. Patton's bill were proved; that a mistake had occurred in drafting the deed, and proceeding to reform and correct the deed according to proof, decreed that Mrs. Patton's trustee should hold all the property in trust for her sole and separate use, free from the control and liabilities of her husband, and upon no other trust whatever, and annulled and cancelled all other trusts, uses or limitations, created by the deed. This decree still stands unreversed, and no effort has thus far been made upon the part of any party to the suit to have it reviewed.

After the rendition of this decree, to-wit: On the 17th August, 1872, plaintiff Linn filed an amended bill in his suit, setting out the former decree in his favor, which had not yet been executed by the sale of any of the mortgaged property; also setting forth the proceedings and decree in the above mentioned suit of Mrs. Patton against her trustees and children, by which it had been judicially ascertained that she was vested with a title in fee simple to the lands conveyed to her by the deed of partition, instead of having merely a life estate therein; and showing that in addition to the land embraced in the mortgage, Mrs. Patton acquired under the deed of partition three other tracts in Kanawha and Fayette counties. The bill then alleged that plaintiff's former decree for $2,227 constituted a lien upon all these lands, as a

1877.
January Term.

Linn
v.
Patton, trustee,
et al.

judgment he having had it put on the judgment lien docket of Kanawha and Fayette counties, and prayed that Mrs. Patton's fee in said lands should be subjected to the satisfaction of this decree. This amended bill was also regularly matured against the appellants, and they still failing to answer either it or the original bill, the court, on the 1st day of November, 1872, pronounced a further decree in the cause. By this decree the court modified the decree of March 23, 1871, so as to direct the sale in fee simple of the land embraced in the mortgage, instead of a mere life estate, as was provided by the former decree. This modification was based upon the fact, that upon Mrs. Patton's bill the court had reformed and corrected the trusts in the deed of partition. The decree further directed commissioner McWhorter to make the sale alone, as the other commissioner, Martin, had removed from the State; and reserved to the plaintiff the right to apply for further decree of sale, if the property then ordered to be sold should prove insufficient to satisfy his debt.

On the 23rd May, 1873, the above decree of sale still remaining unexecuted, at the instance of Mrs. Patton and her trustee, Oliver A. Patton, and by their consent signified by their both signing the decree, the court modified the former decrees of sale so as to associate J. M. Laidley as a commissioner with Commissioner McWhorter, and authorizing the commissioners to sell the land in lots, upon the ground and after extensive advertisement, and requiring them to exhaust the land before resorting to a sale of any of the personal property embraced in the mortgage.

Proceeding under these several decrees of sale, as modified by the last decree, the commissioners advertised the land for sale on the 28th August, 1873. But before the day of sale arrived, Mrs. Patton and her husband and trustee, applied for and obtained an injunction to the sale, the effect of which was to tie up the hands of plaintiff as to any sale of the land.

1877.
January Term.

Linn
v.
Patton, trustee,
et al.

The bill seeks to enjoin the sale : 1st. Upon the ground of a cloud of title upon the land, which it is alleged, was unknown to them at the time they consented to the decree of sale, and which would prevent a fair sale of the property. What the nature and character of this cloud of title is, the bill does not disclose. It simply asserts, that one W. H. Edwards, who is made a party defendant to the bill, claims title to a portion of the land. No deed or other evidence of his title is exhibited with the bill, nor does the bill show in any way the nature or extent of the Edwards claim, or upon what it is based ;

2d.   Upon the ground that in the deed of partition between the devisees of William Tompkins, deceased, Mrs. Patton had charged her portion of the property with the payment of one-seventh of a bond of some $11,000, which she and the other devisees had executed to their brother and co-devisee, C. C. Tompkins, for his interest in the estate. That this bond was now owned by one John Hall, that but a small part of Mrs. Patton's portion of the bond had been paid, that the balance was long due and constituted the first lien on all Mrs. Patton's property. That Hall was thus a necessary party to the suit of Linn, but had not yet been made so. Also, that James M. Laidley, James H. Nash and Wesley Mollohan held liens upon the land decreed to be sold, and were, therefore, necessary parties to the Linn suit, but had not yet been made so. Hall, Laidley, Nash and Mollohan were made parties defendant to the bill of injunction ;

3d.   The bill sets out the proceedings and decree in the suit of Mrs. Patton against her trustee and children above referred to, for the correction of the trusts created by her in the deed of partition, and upon this bill an injunction was granted, August 25, 1873, staying the sale which had been advertised by the commissioners.

This bill was duly answered by the defendants, Linn, McWhorter, Laidley, Nash and Mollohan, at the spring

1877.
January Term.

Linn
v.
Patton, trustee,
et al.

term, 1874, of the circuit court. These answers denied all the material allegations of the bill, upon which its prayer for an injunction was based, except the facts that the additional liens set out in the bill were upon the property, and that the holders of them had not been made parties to the Linn suit at the time the decrees of sale were made. The answer of Linn further showed, however, that the John Hall lien had become, by assignment, the property of Thomas B. Swann, and that since the granting of the injunction, in August, 1873, all difficulty as to the want of necessary parties had been obviated by an amended and supplemental bill, which he had filed in his suit on the 3rd April, 1874, and which was now fully matured as to all the defendants, both the original defendants and those brought in for the first time by this new bill. The answers of Laidley, Mollohan and Nash, showed the nature and amount of their liens on the land in question, that they were all subsequent to the plaintiff's mortgage, that they were then due, and joined in Linn's prayer for a sale of the property for the satisfaction of all the liens thereon. The defendant, Edwards, although the bill of injunction was duly taken for confessed and set for hearing as to him at rules, failed to appear and assert any adverse claim or title whatever to the land. Patton and wife took no evidence to sustain the allegations of their bill which were controverted by the answers.

In the meantime, after the injunction was granted, Linn, on the 3d day of April, 1874, by an amended and supplemental bill, brought before the court all the devisees of William Tompkins, also John Hall, the assignee of C. C. Tompkins, and Thomas B. Swann, the assignee of Hall. In the amended bill, the plaintiff alleges that, as alleged in the deed of partition before mentioned, a lien was reserved upon the four tracts of land assigned and conveyed thereby to R. Ellen Tompkins, now R. Ellen Patton, for one-seventh of the bond to Charles C. Tompkins for $11,355.13, which bond was

dated July 3, 1866, and was payable four years after its date, upon which O. A. Patton paid, on July 11, 1873, $625.56; and the bill asks that the additional parties above named should be made defendants, and that whatever should remain due on this prior lien should be paid to the present owner thereof, T. B. Swann, out of the proceeds of the sale of the lands of Mrs. Patton. The exhibits filed show that this first lien belonged to T. B. Swann, as assignee, and that it amounted, on June 13, 1874, to $1,358.41, with interest on $1,290.75, part thereof, till paid. Both of the causes of Linn v. Patton and others, and the injunction suit of Patton and wife against Linn and others, were fully matured and ready for hearing, all the parties to each of them being before the court, when, on June 13, 1874, the court heard the two causes together, dissolved the injunction, modified its former decree of sale so as to embrace said vendor's lien of Thomas B. Swann and several other liens upon the property of Mrs. Patton, created since the institution of this suit by deeds of trust. Just before this decree was entered, Oliver A. Patton, as trustee for his wife, filed his answer, in which he says that the claim of the plaintiff for the $1,050 which he paid under the order of the Louisville chancery court, as surety, is not a just claim against the separate estate of his wife, and this order directing its payment by said Linn ought to have been appealed from, but instead of so doing, Linn paid the same against his protest; that this debt, he admits, was a just one, but says his wife's separate estate was not, as he was advised, bound for it by the laws of Kentucky. He further says that he has been informed, and believes it to be true, that Thomas B. Swann then owned this Linn claim, and if so, then he insists that this suit should be heard with another which had been brought in the circuit court of Kanawha, by himself and wife against said Swann and wife, and the other devisees of William Tompkins, assailing the validity of this deed of partition of William Tompkins' lands; and if in said suit

the court refuses to set aside the deed of partition, he believes he will be entitled to a decree against all the parties to this partition, including Thomas B. Swann, for a sum more than sufficient to pay all the demands against him. He states, however, no ground for this belief, and gives none of the grounds on which this suit was based, except simply he alleges that Swann received of said William Tompkins a much larger amount than Mrs. Patton. This answer further states that he expects to obtain in that suit a decree against said Swann for at least $5,000, and that he could not, from such estate as remains in Swann's hands, in the condition in which it is by existing encumbrances, be able to obtain satisfaction, unless it could be offset against the amount coming to Swann in this cause; and it asks that this cause be consolidated with that, and that no decree be rendered in this cause till his and his wife's rights have been investigated and passed upon in this other suit.

The record in this case is not made a part of this answer, and no proof was taken to show that Swann's pecuniary condition was such as is represented in this answer. It was replied to generally.

From this decree of June 13, 1874, the defendants, Oliver A. Patton, trustee, and R. Ellen Patton, have appealed to this Court.

This case, it seems to me, has been greatly complicated and embarrassed by the introduction into it of many matters which are irrelevant, and which ought not to have been introduced or considered by the court, but which were improperly considered and acted upon by the court. Stripped of these irrelevant matters, and the case seems to me very simple, and the relief to which the plaintiff was entitled is quite obvious. The bill was filed simply to enforce a mortgage given to the plaintiff, J. H. Linn, by Oliver A. Patton and wife, on certain personal property and on a tract of land in Fayette county, West Virginia. It is true this deed was executed not only by Oliver A. Patton and wife, but also

1377.
January Term.

Linn
v.
Patton, trustee,
et al.

by Oliver A. Patton, her trustee. But the exhibits filed with the plaintiff's bill show that Oliver A. Patton simply held the legal title to this tract of land in Fayette county as trustee for his wife for life; remainder to her children; and that she had in said land no sole and separate estate, and that, therefore, on his marriage, he, by virtue of his marital rights, became entitled to the rents and profits of this tract of land during the continuance of the marriage. His right, therefore, to this land during the continuance of this marriage, passed by his having executed the mortgage deed; and this is all the interest in this land that did pass by this deed, for though if his wife had joined in this deed and acknowledged it in the manner required by our law, her equitable life estate would have passed, which might be an interest which might extend beyond the continuance of the marriage, had she survived her husband. Yet, as the certificate of her acknowledgment of this deed fails to certify that "she does not wish to retract it," this deed, so far as it undertook to convey this land, is totally inoperative as to her. See *Leftwich v. Neal,* 7 W. Va., 569. The personal property named in this deed is thereby effectively conveyed, and would have been had the wife not joined in the deed. The right of the plaintiff to subject this personal property absolutely, and this tract of land in Fayette county during the joint lives of Oliver A. Patton and wife, would result from the mortgage itself, had it been signed by the husband alone, and would in no manner depend upon the character or origin of the debts due to the plaintiff, secured by this mortgage.

The bill did not propose to subject any sole and separate estate of R. Ellen Patton to the payment of these debts by reason of the character and origin of these debts. There was no allegation in the bill that she owned any separate estate of any kind, and so far as any proof in the record shows, she did not then own any sole and separate estate. The scheme of the bill was not to

1877.
January Term.

Linn
v.
Patton, trustee,
et al.

subject any sole and separate estate she might own, to the payment of debts which, by their character and origin, were general charges upon such estate, but it was simply a bill to subject the husband's interest in a particular tract of land and certain specific personal property which belonged to him by virtue of his marital rights, to the payment of a specific lien created by a mortgage executed by him. With this writ to subject the husband's real and personal property, there could not have been united a claim to subject the sole and separate estate of the wife to the payment of these debts by reason of their being a charge upon it from the character and origin of the debts. If there had been in the bill these two distinct and separate objects against the several defendants, who had distinct interest in distinct and different property, the one based on a mortgage given by the husband, and the other on different property in which the wife had a sole and separate estate, and which was not charged by this mortgage, but was chargeable only by reason of the character of such debts, such a bill would have been multifarious, for a bill in equity which includes different defendants who have distinct interests, is multifarious. *Stuart's heirs, &c., v. Coulter,* 4 Rand., 74. But the bill was not multifarious, for it sought only to subject to the payment of these debts the property, real and personal, conveyed by the mortgage; and this property was equally liable to the payment of these particular debts, for she had a right, by this deed, to charge her personalty if she had a sole and separate estate in it, with the payment of these debts, though they had been the husband's debts only, or even the debts of other persons. See *Woodson, trustee, v. Perkins,* 5 Gratt., 345; *Jaques v. The Methodist Episcopal Church,* 17 Johns., 548.

The bill, therefore, properly omitted to state, if such were the case, that she had a separate estate in the personalty; for with the object which the plaintiff had in view, it was immaterial whether she had or not. The

mortgage does say that the personal property thereby conveyed belonged to the separate and trust estate of the parties to the first part of the deed—that is, of the grantors in the deed, the husband as well as the wife. No just inference can, therefore, be drawn from this language as to her having a separate estate in this personal property not subject to the control of her husband; but if she had, for the purposes sought in this bill it was immaterial, and accordingly not alleged. There is a kind of vague allegation in the bill as to what the consideration of one of these obligations secured was—that is, house rent and household furniture—and there is proof that the other was to release an attachment levied on household property. But this allegation and proof was altogether unnecessary for the purpose of this suit, which was simply to foreclose this mortgage. After the filing of this bill the plaintiff ascertained that the real estate which had been conveyed to R. Ellen Patton, consisting of four tracts of land in West Virginia, one of them being the tract of land conveyed by this mortgage, was subject to a prior lien held by T. B. Swann; and he then properly amended his bill, making Swann and the parties who might have an interest in this prior lien, parties defendants. Neither the amount of the plaintiff's claim or that of the prior lien owned by Swann, was the subject of dispute, and the decree rendered in the cause should have been simply to have sold the personal property named in the mortgage first, and applied the proceeds to the payment of the plaintiff's claims thereby secured, which amounted to $2,227, with interest thereon, from July 5, 1870; and if insufficient, the tract of land in Fayette county should have been sold, the purchaser under such sale to hold the same only during the coverture of Oliver A. Patton and R. Ellen Patton, and the proceeds of this should have been first applied to the payment of the prior lien held by T. B. Swann, $1,358.41, with interest on $1,290.75, part thereof, from June 13, 1874, and then to the payment of the

1877.
January Term.

Linn
v.
Patton, trustee,
et al.

plaintiff's lien aforesaid remaining unpaid; and if insufficient to pay off the same, then so much of the other real estate which had been in the partition of William Tompkins' land conveyed to R. Ellen Tompkins, now R. Ellen Patton, should have been sold as would raise an amount equal to the amount which had been paid to Swann from the sale of the tract of land in Fayette county named in the mortgage; the plaintiff, Linn, having a right to be substituted to that extent to the lien of Swann, which was on all four tracts of land.

In selecting the land thus to be sold, the court should have avoided, unless the same becomes necessary, the sale of that portion of the land alleged, though not proven, to be claimed by William H. Edwards and the Mount Carbon Mining Company; and if any portion of the plaintiff's claim remains unpaid, the court should provide in its final decree that it should be without prejudice to the right of the plaintiff to subject any other portion of said land, or the whole thereof, to the payment of the balance due him, on his establishing a right so to subject the same.

All the balance of this voluminous record ought to have been disregarded by the court as irrelevant and foreign to this case.

Thus, the first amended bill of the plaintiff ought not to have been filed, and the decree of October 31, 1872, based upon it, must be reversed and annulled. By this amended bill it is claimed that by the decree of March 23, 1871, which he had entered on the judgment lien dockets of Kanawha and Fayette counties, he had obtained a lien on the separate estate of R. Ellen Patton, and that since the rendition of this decree the court had reformed her deed to N. Fitzhugh, and declared she had a sole and separate estate in all the lands thereby conveyed; and this amended bill sought to enforce this supposed judgment lien on all these lands. Now, it is obvious that this decree created no lien on any of the lands held for the sole and separate use of R. Ellen Pat-

1877.
January Term.

Linn
v.
Patton, trustee,
et al.

ton or on any of the lands of Oliver A. Patton. It was not a decree for the payment of money at all; it simply declared that "unless the defendants, O. A. Patton and R. Ellen Patton, did, within sixty days, pay to the complainant $2,270, with interest from July 5, 1870, and the costs of the suit," that the property named in the mortgage should be sold. This was no judgment, and of course did not create a judgment lien·on the lands of O. A. Patton, much less on the lands held for the sole and separate use of his wife. All the decrees subsequently entered in the cause were based on this false assumption, and must be reversed and annulled. And as we have before shown, no claim to subject her sole and separate estate to these debts, though such claim had been well founded, could have been set up in this cause, as it was foreign to the objects of the suit, and if claimed in the bill, would have rendered it multifarious. Of course, therefore, it would have been improper to have permitted an amended bill to have been filed, introducing this foreign matter into the cause.

The injunction awarded in the cause of Oliver A. Patton and R. Ellen Patton v. J. H. Linn must be dissolved, and the bill dismissed, no cloud upon the title to the tract of land in Fayette county being proven. There is no proof that W. H. Edwards even sets up a claim to any portion of said land. And the only claim for which any of these lands can properly be sold in this suit is the plaintiff's claim and the claim of Swann. The plaintiff's claim is only to sell said land during the joint lives of O. A. Patton and R. Ellen Patton, and cannot therefore possibly come in conflict with the claim of the children of R. Ellen Patton, whose claim, if they should ever be held to have any, does not begin until after the death of R. Ellen Patton. And the claim of Swann being a vendor's lien, is superior to any claim said children could have. And the position taken in this bill of injunction, that McWhorter, Laidley, Nash and Mollohan, all having specific liens created

by deeds of trust since the institution of this suit, are necessary or proper parties to this suit; and that no sale can be made until they have been made parties, is obviously unsustainable, for if such was the law no sale could ever be made, as such liens might from time to time be given, and the sale of the property thus indefinitely postponed. Such dismission of this injunction bill will be of course without prejudice to any of the defendants. And, lastly, this suit ought not to be heard with nor consolidated with the suit of Patton and wife v. Tompkins and others, as asked for in the answer of Oliver A. Patton, as trustee of his wife, filed at the May term, 1874. The very loose allegations of this answer, in reference to this cause, are, that it has been brought to set aside the partition among the devisees of Tompkins, one of whom is Swann's wife, or for a decree for owelty of partition, if the partition is not set aside, and that if Swann recovers in this suit his claim that he will probably not be able to make out of Swann this amount which as owelty of partition he expects to get a decree for against him in this chancery suit which he asks to have consolidated with this. Swann is not one of the devisees of Wm. Tompkins; it is true he married one of these devisees, but it is difficult to concieve how in such a suit as is thus vaguely described a court could render any personal decree against Swann. And it would be unjust to delay him in the enforcement of an admitted debt coming to him personally upon these vague allegations that he may have a claim against him especially when it would seem he could have no such claim, and especially when this answer, is not filed setting this up till a final decree was about being entered, and none of the papers of this suit are filed with this answer so as to afford this court an opportunity of seeing the exact character of the suit.

But it is insisted that the decree of March 23, 1871, is a consent decree and cannot therefore be appealed from or reversed and annulled. But this decree, so far as it decided that the life estate of Mrs. R. Ellen Patton

1877.
January Term.

Linn
v.
Patton, trustee,
et al.

1877.
January Term.

Linn
v.
Patton, trustee,
et al.

was liable to be sold to pay the plaintiff's claim was not, as shown by the face of the decree, a consent decree. The court having so decided proceeded by consent of parties to order its sale on certain terms. The order of sale would necessarily follow the decree of the court that her life estate was subject to sale, and the consent can be fairly interpreted to apply only to the terms of sale. And it is questionable whether it can be fairly interpreted that the decree shows on its face her consent even to the terms of sale. It recites that this portion of the decree was made " by the consent of all parties signified by signing this decree," but her name is not signed to the decree, but only the name of O. A. Patton, trustee for her. But were this portion of the decree to be regarded as a consent decree it would not prevent the reviewing and reversal of it, as the decree, so far as it decides that her life estate was liable to sale, was made without any pretense of consent on her part. And it may be even questioned whether she, a married woman, having no separate estate, could give consent to the sale of her real estate. So the decree of May 23, 1873, which was a consent decree, merely modified the terms and manner of the sale of her property, some of it her sole and separate property, the court, without her consent, having determined by a previous decree that it was liable to sale, and having ordered its sale. The setting aside of this previous decree, made without her consent, of course necessitates the setting aside of this decree.

The decrees, therefore, of the 23d of March, 1871, of October 31, 1872, of the 23d of May, 1873, and of December 16, 1873, entered in the cause of Linn v. Patton, &c., and the decree of June 13, 1874, entered in said cause and in the cause of Oliver A. Patton, trustee, and R. Ellen Patton v. James Laidley, commissioner, J. H. Linn and others, should all be reversed and annulled, and the appellants should recover of the appellees, other than the devisees of William Tompkins, their costs about this appeal expended, and this cause must be re-

manded to the circuit court, to be proceeded with according to the principles laid down in this opinion, and further according to the principles and rules of a court of equity.

1877.
January Term.

Linn
v.
Patton, trustee,
*et al.*

DECREES REVERSED and cause remanded.